dering a verdict based upon such charge of negligence, and that, there being no other charge of negligence submitted to them upon which to base a finding, their verdict cannot stand. It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur; WILLIAMS and NASH, JJ., in result only.

---

### DULFER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. November 28, 1906.)

MASTER AND SERVANT—INJURY TO SERVANT—FELLOW SERVANTS.

While plaintiff, a street car conductor, was walking behind his car to guide the trolley pole, as the car was being pulled into the repair shop, the motorman suddenly shot the car ahead into the shop, causing the conductor, around whose arm the trolley rope was twisted, to be dragged into a car repair pit, about 10 feet within the shop, and injured. The pit was a necessary part of the repair shop, and was neither defectively constructed, nor marked by any unusual features making it a pitfall. *Held*, that though the pit was a cause, without which the injury would not have occurred, the immediate cause of the injury was the conduct of the motorman, a fellow servant of the conductor's, and hence the street car company was not liable for the injury.

Hirschberg, P. J., and Hooker, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Theodore Dulfer against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and order denying new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, GAYNOR, and MILLER, JJ.

I. R. Oeland, for appellant.
Melville D. France, for respondent.

JENKS, J. The version of the plaintiff is that the car was moving and he was walking behind it to guide the trolley pole along its wire, "and all of a sudden the motorman shot ahead in the car shop, and the pole came off, and the ropes twisted around my hand and kind of lifted me, and the car went ahead under the car barn then—that is, the car barn—and it was quite dark, and when I came down again I went down in the pit." He further testifies that, when he went down, the car "was going at a pretty good speed." And also that, when the trolley pole left its wire, "it went up because it came under the door, and it went away down, and as soon as it passed the door there was a big space, and the pole flew away up, and it sort of lifted me off my feet." He weighed 180 pounds, and he was lifted about an inch off the ground. The pit was about 10 feet within the barn.

The sole question of the defendant's negligence submitted to the jury without objection by the plaintiff was whether this pit was a dangerous place and whether the plaintiff was warned. It seems to me that although the pit was the causa sine qua non of the injuries,

for, of course, had it not existed the plaintiff would not have been cast into it, the causa causans was the conduct of the motorman as described by the plaintiff. Trapp v. McClellan, 68 App. Div. 362, 74 N. Y. Supp. 130; Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216; Leeds v. New York Telephone Co., 178 N. Y. 118–122, 70 N. E. 219. Now the motorman was the fellow servant of the plaintiff.

And further I think that it cannot be said that the defendant in the exercise of due care should have foreseen that in such a situation as is described by the plaintiff its motorman might have managed a car so as to carry one in the relative situation of the plaintiff off his feet and cast him down into a pit ten feet within the barn, within the rule of Jex v. Straus, 122 N. Y. 293, 25 N. E. 478, and Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009. It is not contended but that the pit was a necessary part of the defendant's repair shop, or that it was marked by any unusual features which made it a pitfall, or that any construction was lacking, to its defect, or that any precaution about it could have been taken which would have saved the plaintiff under the conditions as described by him.

I think that the judgment and order must be reversed and a new trial granted, costs to abide the event.

MILLER, J., concurs. HIRSCHBERG, P. J., and HOOKER, J., dissent.

GAYNOR, J. (concurring). The pit into which the plaintiff was dragged by the motorman was the usual one used to get under cars to repair them, and was in the part of the car shed or yard devoted to repairs, and called the repair shop. The plaintiff had been sent out on the route as conductor to bring in a disabled car and put it in this repair shop. Instead of remaining on the rear platform of the car he got off and walked behind as the car went into the shop, holding the rope of the trolley pole in his hand to keep the trolley pole on the wire. The motorman suddenly shot the car ahead rapidly as he came to the pit, the rope got wound around the plaintiff's hand and lifted him up and dragged him into the pit. Such is his version. He testified that he did not know there were pits in the repair shop and was not instructed that there were; and on this the case was sent to the jury. I submit that this testimony is wholly incredible. It is a matter of common knowledge that pits are necessarily there. We all know it, and yet we are asked to credit a railroad employé who says he did not know it. Courts should not allow themselves to be imposed on by obvious falsehoods; to do so gives a false notion of the administration of justice, and begets disrespect for it. The belief that courts can be fooled should be dispelled.

Aside from this, the motion at the close to dismiss should have been granted. The proximate cause was the negligent act of the motorman, his shooting of the car ahead so suddenly and rapidly. Even if the plaintiff knew the pit was there he would have been dragged into it just the same by the rope which entangled his hands. It follows that the failure to inform him that pits were in the shop was of no importance—if we are to accept his pretense that he did not know it.