### THE WILKESBARRE.

(District Court, S. D. New York. February 16, 1907.)

COLLISION—TUG AND STEAMER AT PIER—ABSENCE OF LOOKOUT.

A tug with a tow, and having no lookout, was approaching a pier, near which she intended to leave her tow, and the master, who was at the wheel, changed her course toward the pier in order to make a turn. Immediately after he suddenly fell in a faint, and the tug, being without guidance, ran into a steamer which was lying at the pier. *Held* that. while the collision was the result of inevitable accident so far as related to the master, it was proximately due to the failure to keep the lookout required by law, since, if a competent one had been properly stationed and attentive to his duties, he would have noticed the trouble and prevented the collision, either by changing the tug's course or having the engineer stop or reverse.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 140–151.]

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libellant.
Carpenter, Park & Symmers, for claimant.

ADAMS, District Judge. This action was brought by the Deutsche Dampschiffahrts Gesellschaft Hansa, the owner of the steamer Werdenfels, to recover from the tug Wilkesbarre the injuries sustained through a collision between the vessels while the former was lying

on the southerly side of pier No. 3 of the Bush Terminal Company on the Brooklyn side of New York Bay, on the 14th of May, 1906. The tug was returning from sea with a light mud scow, which she was towing on a hawser astern at the rate of 4 or 5 miles per hour to anchorage off the Terminal Company's property. The tide was flood and the tug master's intention was to shortly turn the tow so as to leave the scow at anchor headed to the tide, and with that view had ported his helm slightly in order to make a sweep for that purpose, when he became unconscious and fell on the floor near the wheel. The tug being then without a guiding hand turned too much to the starboard and shortly collided with the stern of the steamer, doing some damage to her rudder, &c. The defence is inevitable accident.

The collision having occurred while the steamer was lying motionless at a pier, the burden was upon the tug to establish a defence and she puts forward the said plea.

There can be little doubt that the master was ordinarily a competent man, not subject to such attacks, which his physician termed "Cerebral vertigo with unconsciousness from gastric disturbances." This was the first attack he had had and it could not have been anticipated. As far as the master is concerned, the claimant may be regarded as having established a defence but it is strongly urged that it cannot prevail because the tug is liable by reason of not having a lookout. It is urged by the claimant that the fact of there having been no lookout is immaterial, the proximate cause of the accident having been the master's sudden illness, citing Laidlaw v. Sage, 158 N. Y. 73, 98, 52 N. E. 679, 44 L. R. A. 216. There are some expressions in that celebrated case favorable to the claimant's contention. The syllabus there contained the following:

"The evidence in an action for a personal injury, in which the plaintiff claimed that the defendant, on being suddenly threatened with an explosion of dynamite by a third party, moved the plaintiff's position to protect himself and thus increased the plaintiff's exposure to injury from the explosion which immediately followed, reviewed and found not sufficient to justify the trial court in refusing to direct a verdict for the defendant, or in submitting to the jury the question of the defendant's liability—it appearing that there was not sufficient evidence that the defendant performed any act or was guilty of any omission which rendered him even technically liable to the plaintiff, and it being held that, even if there was evidence of a technical liability, the proof was not sufficient to justify the submission to the jury of the question of substantial damages, and that the alleged acts of the defendant were not the proximate cause of the plaintiff's injury."

It is doubtless true that the accident would not have happened if the wheelsman had not fainted and in that sense his disability was the proximate cause of the accident but a lookout is legally required on all navigating vessels capable of injuring others, and I think there can be no doubt that if a competent one had been properly stationed on this vessel, he would have noticed the absence of proper steering and corrected the same or had the engineer stop the engine and reverse, if necessary. The engineer himself noticed the trouble before the collision and endeavored to avoid it by stopping and reversing the engine but was too late in his action.

The tug did not claim to have a lookout and was unquestionably

negligent in failing to have some one to act in that capacity. It is provided by article 29 of the act of Congress approved June 7, 1897 (30 Stat. 102, c. 4), as follows:

"Art. 29. Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

It seems to me to be clear that this accident happened from the neglect of the tug to have a proper lookout.

Decree for the libellant, with an order of reference.