BERTHA ALBRING, as Administratrix, etc., of ELMER S. ALBRING, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — a brakeman injured while on a car walking towards a bridge where the telltales were defective.*

The fact that some of the telltales, maintained by a railroad company near a low bridge, are missing, leaving an opening through which the head of a brakeman standing on top of a car might pass without being struck, does not render the railroad company liable for the death of a brakeman, who while on top of a box car was struck by the bridge, when it appears that a few moments before the accident he was walking towards the front of a car approaching the bridge, and that it was light enough for him to see the telltales and the bridge, which were in plain sight.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from an order of the Supreme Court, made at the Wayne Trial Term and entered in the office of the clerk of the county of Wayne on the 16th day of June, 1898, denying his motion for a new trial made upon the minutes, the jury having rendered a verdict in favor of the plaintiff for $10,000.

This is an action brought under the statute by the legal representative of Elmer S. Albring, deceased, to recover damages for his death as caused by the negligence of the defendant.

Upon the 1st day of December, 1895, Elmer S. Albring entered the service of the defendant as a brakeman. Upon the 14th day of January, 1896, he was found in a dying condition by the side of the defendant's track about one hundred feet east of the west end of a bridge which carries the highway over the track at Red Creek, one of the stations upon defendant's road. Upon that day Albring left Oswego on a freight train for Wallington, about ten or eleven o'clock in the morning, and the return trip commenced about three in the afternoon. He was head brakeman both ways. On his return trip his train arrived at Red Creek at four-fifty in the afternoon. Two witnesses on behalf of the plaintiff swear that Albring was seen several hundred feet west of this bridge to jump from a box car down upon a gondola car and thereafter to climb upon another box car. He passed out of view of these two witnesses from seventy-five to one hundred and fifty feet west of the telltales, which were

placed at two hundred and fifty feet west of the center of the bridge to warn brakemen of the low bridge which they were approaching. He was at that time walking leisurely toward the front of the car. After the train had passed this bridge some trackmen, who were repairing the defendant's track just east of the bridge, discovered a cap, and, upon going a short distance further, found the plaintiff's intestate in a dying condition. This bridge was so constructed that the bottom of the needle beam was sixteen feet eleven and one-half inches from the top of the rail. The top of an ordinary freight car is from eleven feet three inches to eleven feet nine inches from the top of the rail. This needle beam is a long beam placed under the center of the bridge parallel with the track, about eleven inches square, and projects about five feet from the side of the bridge on either side. The train was eastward bound.

About two hundred and fifty feet west of this bridge, upon the the north side of the track, was a pole with an arm that extended over the track to which were originally attached fourteen telltales, so called. These consisted each of an iron rod about sixteen inches in length, and attached to the end of that rod was a rope about two feet in length and an inch in thickness. These telltales hung over the track at a height of about sixteen feet and two inches, their purpose being to warn brakemen on the train of the approach to a low bridge. Upon the day in question, and for several months prior thereto, two of these telltales, to wit, the fourth and fifth from the south, were entirely gone. There is evidence, also, to show that the third one was tangled with the second. There was, therefore, a space of from fifteen to eighteen inches through which the head of a brakeman might pass without being struck by these telltales. The evidence shows that the center of this space came about two or three inches south of the center line of the track.

Further facts appear in the opinion.

*Edward Harris,* for the appellant.

*D. P. Morehouse,* for the respondent.

SMITH, J. :

The negligence of the defendant in failing to maintain these telltales in proper condition is the fault for which it has been charged

by this verdict. By subdivision 2 of section 49 of chapter 565 of the Laws of 1890, the defendant was required to " erect and maintain such suitable warning signals at every road, bridge or structure which crosses the railroad above the tracks, where such warning signals may be necessary for the protection of employees on top of the cars from injury." Defendant could not be charged with negligence in the maintenance of this low bridge. No improper or unusual construction is claimed. It is one of its structures obviously dangerous, the risk of which was assumed by the employee. Whether or not Albring had been warned of this particular bridge, it was a structure of which he was bound to take notice. He, however, had the right to assume that the defendant had performed the duty enjoined by the statute, and the risk which he assumed, therefore, was the risk of injury from this bridge when warned by such signals as the statute required.

There is sufficient evidence from which the jury might find that Albring was struck by the needle beam of this bridge. He was last seen upon the top of the box car, a short distance before reaching the bridge. The jury was justified in finding that his plush cap rubbed against this needle beam and that some of the plush was left upon the beam. The evidence of the physician that the scalp was loosened and pushed back from the front to the back of the head sustains the theory of the plaintiff that he was walking forward upon the box car and was struck by the needle beam of the bridge.

Two further propositions remained for the plaintiff to establish before she should merit a verdict: *First*, that the defective condition of these telltales was the cause of the injury; *second*, that her intestate was free from contributory negligence. Upon both of these propositions we are compelled to hold that she has failed to carry the burden of proof which the law places upon her.

By the plaintiff's evidence it appears that Albring was walking toward the front of the train. The ground was covered with snow, and it was not yet dark. There was a strong wind from the northwest, which probably blew these other telltales against him unless he purposely avoided them. But whether or not he was struck by the telltales and in this way warned, the structure was one which was plainly to be seen. He was walking directly toward it. The

telltales came within a few inches of his face. It was impossible. for him to pass without seeing them, and thus being notified of the approach to danger. The failure to maintain them in proper condition was clearly negligence in the defendant. If he were warned, however, by striking them or by seeing them, the negligence of the defendant has not caused this injury. The plaintiff argues in answer to this position that it was a snowy, blustering day, and that it cannot be said that Albring must have seen these signals. It is true that there is evidence to the effect that at intervals during the day it was snowy and blustering. There is no direct evidence that at this particular time there was any storm or that any snow was falling in such a way as to blind him. The evidence clearly indicated the contrary. From the evidence of Longyear and Phelps he was plainly seen between two and three hundred feet away. Phelps tells in detail how he jumped from the box car upon the gondola car, and how he climbed again on a box car. He swears distinctly to the manner of his dress. "He had a short coat, and I noticed he had on felt boots that came just below the knee on the outside of the pants, dark brown in color. Q. Could you tell whether they were felt or knit? A. Yes, sir; they were felt. Q. What kind of a shoe did he have? A. I think it was rubber." Longyear swears: "He was going toward the engine. Dressed in dark clothes, a cap on his head, felt boots as I took them to be on his feet, with the legs on the outside of his pants."

If the weather was such as to permit these witnesses from a distance of several hundred feet to observe the details of this man's dress, the man himself clearly could and should have seen these warning signals which were right before him. It is not probable that he was walking along that car with his eyes shut.

Again it is urged that this engine was laboring in climbing a grade and was throwing out a great deal of smoke and steam. The witness Longyear swears: "Q. When you saw this train as it passed by into that cut going toward the bridge at the time you speak of when you saw this man upon the train did you notice anything with reference to the steam and smoke made by the train? A. Yes. Q. What did you notice? A. I noticed it fogged down into the cut."

The engineer of the train also swears that it was emitting a great

deal of steam and smoke. While from this evidence it might be inferred that the smoke and steam settled down upon the track at the bridge, the evidence is not sufficient from which a jury could find that the smoke and steam settled down upon the track more than 200 feet west of the bridge where were these telltales. The circumstances lead to the contrary inference. The evidence of the civil engineer is to the effect that only from about 100 feet west of the bridge the bank rose suddenly to the height of the road upon the bridge. The distance from the Keeley crossing to these telltales was 622 feet easterly. At 600 feet easterly of the Keeley crossing the top of the embankment was less than three feet above the top of the tie. At 700 feet easterly of the Keeley crossing the top of the embankment was only four and a half feet above the top of the tie. It will thus be seen that at the place of these telltales there was no embankment to prevent the wind from having full sweep over the tops of the cars. The wind was blowing strongly from the northwest. The train consisted of four cars. Albring was a little forward of the center of the train. With this strong wind at this spot it would seem impossible that the smoke could, in any way, envelop him to prevent his seeing clearly these telltales as he came to them. The witnesses Longyear and Phelps saw him until he was within from 75 to 150 feet of these telltales, and there is no intimation in their evidence that he was at that time in any way enveloped in the smoke.

In *Wallace* v. *C. V. R. R. Co.* (138 N. Y. 302) the evidence showed that the plaintiff as he approached the bridge was " intent upon the discharge of his duty, with his face toward the rear of the train in a position to most effectually discharge his duty, and thus his back was toward the bridge. He was not at the time aware that he was approaching a place of danger, and had no warning of the bridge." In the case at bar, however, while he was walking forward on the train with these telltales and this bridge in plain sight before him, the jury is not authorized to find that the negligence of the defendant has caused this injury or that he has exercised the care of an ordinarily prudent man to avoid the injury.

In *Cordell* v. *N. Y. C. & H. R. R. R. Co.* (75 N. Y. 330) it was said: " The circumstances must be such as to show that the deceased exercised proper care for his own safety. When the cir-

cumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be nonsuited. The presumption that every person will take care of himself from regard to his own life and safety cannot take the place of proof because human experience shows that persons exposed to danger will frequently forego the ordinary precautions of safety."

In *Bond* v. *Smith* (113 N. Y. 378) Judge EARL, after showing that the plaintiff's intestate was familiar with the premises where he was injured, says: "We have no right to guess that he was free from fault. It was incumbent upon the plaintiff to show it by a preponderance of evidence. She furnished the jury with nothing from which they could infer the freedom of the intestate from fault. She simply furnished them food for speculation, and that will not do for the basis of a verdict. The law demands proof and not mere surmises." (See, also, *Laidlaw* v. *Sage*, 158 N. Y. 94, 98.)

We are of the opinion that the verdict was wrong.

All concurred.

ADAMS, J. :

If, as stated by the defendant's witness Aiken, the plaintiff's intestate was upon one of the gondola cars when his train passed under the telltale, the defective condition of that appliance could not by any possibility have been the proximate cause of his coming into contact with the bridge. If, on the other hand, he was upon the top of a box car and walking leisurely towards the bridge and telltale, as we are asked to infer from the evidence of Longyear and Phelps, he must have seen both the telltale and bridge in time to have avoided contact with the latter, and consequently he was guilty of contributory negligence.

It follows that in either event the plaintiff ought not to recover, and, therefore, I vote for reversal.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.