(30 Misc. Rep. 163.)

### CAHILL v. MAYOR, ETC., OF CITY OF NEW YORK.[1]

(Supreme Court, Special Term, New York County. December, 1899.)

COSTS—PAYMENT ON AMENDMENT OF PLEADING—RETAXATION.
    When a defendant is allowed to amend his answer by payment of taxable costs to date, the same costs cannot be again taxed on final determination of the action.

Action by Susanna V. Cahill against the mayor, etc., of the city of New York. Judgment for plaintiff. Motion for retaxation of costs. Motion denied.

John Delahunty, for the motion.
John Whalen, opposed.

GILDERSLEEVE, J. The defendant was allowed to amend the answer on "payment of the taxable costs to date." These costs were duly taxed and paid, and then defendant served the amended answer. The case subsequently came on for trial, and a verdict was rendered in favor of plaintiff. Upon the taxation of costs consequent upon this verdict, the items that had previously been taxed and paid on the service of the amended answer were stricken out as having already been paid. The plaintiff now moves for a retaxation, to include those costs. Had the court, upon granting the motion for leave to serve the amended answer, imposed, as a compensation to the plaintiff, the payment of a sum of money equivalent to the taxable costs to date, to be ascertained by the clerk, this motion might well be granted (see Schmidt v. Mackie, 9 Wkly. Dig. 288), as in that case there would not have been a double taxation of the same costs. In the case at bar, as we have seen, the defendant was required to pay "the taxable costs to date." Where a party to an action is permitted to amend his pleading upon the payment of costs, an order to that effect is an adjudication that the items covered thereby belong to the party adverse to the one so amending, and such costs cannot again be taxed by either party to the action. See Woolsey v. Trustees, 84 Hun, 234, 32 N. Y. Supp. 543; also, Seymour v. Ashenden, 13 Civ. Proc. R. 255; Schmidt v. Mackie, supra; Skinner v. White, 69 Hun, 129, 23 N. Y. Supp. 384. The motion for a retaxation is denied, but, under the circumstances, without costs.

Motion denied, without costs.

---

(48 App. Div. 580.)

### CONNOR v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

STREET RAILROADS—PERSONAL INJURIES—NEGLIGENCE—EVIDENCE.
    In an action against a street-railroad company for injuries alleged to have been caused by snow or ice thrown by a sweeper used by defendant to clear the snow from its tracks, in the absence of proof that the snow or ice which had caused the injury, and which plaintiff said came from the direction of the sweeper, did in fact come from the sweeper, and in the absence of proof that this was the result of negligence which could have been avoided, a verdict for plaintiff cannot be sustained.

---

[1] Affirmed on appeal, see 63 N. Y. Supp. 1006.

Appeal from trial term, New York county.

Action by Andrew Connor against the Metropolitan Street-Railway Company. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Charles F. Brown (Henry A. Robinson, on the brief), for appellant. Henry L. Scheuerman, for respondent.

HIRSCHBERG, J. The plaintiff, a driver in the employ of the fire department of the city of New York, was driving down the west side of Lexington avenue, about 3 o'clock in the afternoon of March 11, 1896. It was snowing, about five inches of snow having then fallen, and the defendant was engaged in cleaning the snow from the east track by means of a sweeper, running north, and operated by the cable. The plaintiff met the sweeper at the corner of Seventy-Second street, and apart a distance of about 8 or 10 feet, when the horse became frightened, ran into a lamppost at the southwest corner of Lexington avenue and Seventy-Second street, throwing the plaintiff out, and inflicting upon him severe injuries. In the complaint it is charged that the horse became frightened and ran away by reason of the negligent, careless, wrongful, and unlawful conduct of the defendant in permitting the sweeper to be used in a dangerous and unsafe condition, causing it to throw snow and dirt against the horse, and by reason of the loud clanging of the bell attached to the sweeper, and other noise made by it, and by reason of its unusual and dangerous appearance. The learned trial justice refused to submit to the jury any question of negligence arising out of the allegation of noise from the bell or otherwise in the operation of the sweeper, or because of its unusual or dangerous appearance, but did submit to them the question of defendant's negligence in throwing snow or ice against the horse; charging them, in substance, that there was a disputed question of fact for them to settle as to whether the horse was frightened because of something thrown against him, or was frightened at the scraper itself. They were told that in the latter case there could be no recovery, but in the former case, to quote the language of the charge—

"If they did this thing, they were doing something they had no right to do, and it was negligent and wrongful on their part to do it. * * * So that you will pass upon this question. and say whether the defendant was guilty of negligence or a wrongful act in throwing a piece of material against this horse, and frightening it, and causing it to run away. If you find that to be so, you may find the defendant guilty of negligence which caused the injury."

There was no exception to the charge, but a motion was made on defendant's behalf for the direction of a verdict, which was denied, and an exception taken. The question for review, therefore, is the sufficiency of the evidence to support the verdict on the theory upon which the case was submitted to the jury.

The plaintiff testified that "stuff" was "flying from the sweeper, and a piece struck the horse around the neck,—a piece that appeared to

be hard ice or snow. I could not exactly tell what. I saw it strike the horse. It came from the direction of the plow, and then a moment afterwards I felt a piece strike my cheek here (indicating), and then the horse made a plunge," etc. This is all the evidence in the case tending to show that what struck the horse came in fact from the sweeper. The plaintiff produced a witness who saw the accident from the sidewalk at the northeast corner of Lexington avenue and Seventy-Second street, and who testified that the sweeper was throwing the snow towards the east sidewalk, and that he did not see it throw any snow to the west. On the part of the defendant it was proven by a number of witnesses that it would be, and was, impossible for the sweeper to throw any snow or ice from the tracks in the direction of the plaintiff; that the brooms are constructed and operated at an angle which prevents the material from being thrown to the left; that otherwise one track would only be cleared at the expense of the other; that the sweeper in use on the day of the accident was of the kind uniformly operated since the installation of the cable system; and that, as a matter of fact, on the day and at the time of the accident it threw the material only to the right, i. e. the east, and threw none, and could throw none, to the west, or in the direction of the plaintiff. At the time a violent northeast wind was blowing, which reached a velocity of 46 miles an hour.

The sweeper was operated under a permit from the municipal authorities, and in obedience to a duty which the defendant owed of clearing its tracks from snow in order that public travel might be unimpeded. This could only be done by running the sweeper with sufficient force and speed to accomplish that purpose. Its object is to throw the snow, and to throw it far enough to clear the rails. In operating the sweeper the defendant is to be held, of course, to the rule of reasonable care, in view of the dangers to be reasonably anticipated; but a liability based upon so unusual a circumstance as that of a piece of snow or ice going in an opposite direction from that designed, and without any apparent cause connected with the machinery itself or with its mode of operation, is almost tantamount to holding the defendant to be an insurer of the safety of others who may be using the street at the same time. There was no evidence whatever that the sweeper was defective or of a defective or unusual design, no evidence that those in charge of it were careless in any respect, nothing tending in any way to disprove what has been said as to the fact that it always throws material to the right, or tending to prove that by careless management, or the attainment of too great velocity, or in any other manner whatever, it can be made to throw material to the left, when the brooms are arranged for the purpose of clearing the tracks. Assuming that the thing which struck the horse was thrown from the sweeper, and that that alone caused the accident, the jury were permitted to predicate negligence from that one fact, without any evidence that it was the result of negligence, or that it could have been prevented by the exercise of even the utmost care. In exceptional cases the happening of an accident may be prima facie proof of negligence, but it is not claimed that this is one of that class. The court instructed the jury that "what it was, if

anything, about the car that caused it to throw this piece of stuff against the horse, you can only judge by inference." That is, in effect, to say that the jury could infer that there must have been something to have caused it, and having inferred that they could also infer that the something was the result of negligence. The rule is well established that the burden of proving negligence rests on the plaintiff, and that the jury can only deduce it from the proof, and not from mere inference. In one of its most recent expressions on the subject, reviewing the authorities, the court of appeals said in Laidlaw v. Sage, 158 N. Y. 73, 97, 52 N. E. 687, 44 L. R. A. 225:

"Thus we see that this court has, in a long line of decisions, uniformly held that, to justify the submission to the jury of any issue, there must be sufficient proof to sustain the claim of the party upon whom the onus rests, and that mere conjecture, surmise, speculation, bare possibility, or a mere scintilla of evidence is not enough."

In the absence of proof that the snow or ice which hit the horse, and which the plaintiff said came from the direction of the sweeper, did in fact come from the sweeper, and in the absence of proof that this was the result of negligence, and could have been averted by care in the speed or in the operations of the sweeper in some other definite respect, the plaintiff failed to sustain the burden of proof, and the defendant's motion for the direction of a verdict in its favor should have been granted.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event. All concur.