(142 App. Div. 256.)

### NATIONAL SUPPLY CO. v. JEBB.

(Supreme Court, Appellate Division, Fourth Department. January 11, 1911.)

1. NOVATION (§ 5*)—ACTS CONSTITUTING.

Where a third person purchasing the property of a buyer, indebted to the seller for goods sold and delivered, assumed as a part of the consideration to pay the seller, who agreed to accept the third person as sole debtor and to release the buyer from liability, there was a novation relieving the buyer.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 5; Dec. Dig. § 5.*]

2. WITNESSES (§ 275*)—CROSS-EXAMINATION—EXTENT.

In an action for goods sold and delivered, defended on the ground of novation and ignorance of defendant of the purchases, the cross-examination of defendant, testifying as to his ignorance of the purchases and to a novation, as to independent transactions disclosing the fact that he had unsuccessfully defended an action for fraud, whereby he had obtained a large sum from a third person, and that the court in that case had charged that the third person could not recover unless there was actual fraud, was inadmissible because prejudicing the jury against defendant.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 275.*]

3. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE—CORRECTION BY INSTRUCTIONS.

The error of the court in permitting the cross-examination of defendant in an action for goods sold and delivered, disclosing independent transactions in which he had been found guilty of actual fraud, was not cured by the court charging that the independent transactions were of no consequence in the consideration of the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4145; Dec. Dig. § 1048.*]

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Trial Term, Erie County.

Action by the National Supply Company against William T. Jebb. From a judgment for plaintiff after a verdict, and from an order denying a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

See, also, 137 App. Div. 882, 123 N. Y. Supp. 1131.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Simon Fleischmann, for appellant.
Eugene M. Bartlett, for respondent.

SPRING, J.  The plaintiff, an Ohio corporation, commenced this action in December, 1907, alleging that in the summer of 1902 and down to the month of May, 1903, it sold and delivered goods, consisting of oil well supplies and machinery, to the defendant, a resident of Buffalo, in this state.  The defendant was operating two tracts of land which were producing petroleum, one in Hancock county and the other in Wood county, in the state of Ohio.  The defendant did not personally superintend the drilling or producing operations on either of these tracts, and the alleged purchases were made of the plaintiff by agents of the defendant in actual charge of his business on these two parcels of land.

The defendant claimed on the trial that his books of account containing the entries of these transactions had been destroyed and he had no personal knowledge of the purchases, that the agents who made them were unfriendly to him, and, as several years had elapsed after the business had terminated and before the commencement of this action, he insisted that the sales should be proven by competent proof.  The defense on this line does not impress me favorably.  It was, however, left to the jury to determine whether the goods were actually sold and delivered to the defendant, and it seems to me there was sufficient evidence, in connection with the inferences which may properly be indulged in, to require submission to the jury.

The account of the supplies for each tract was kept separately and designated by the name of the county in which it was located.  The Hancock county account amounted at the time of the trial to about $1,550, while the Wood county account exceeded $9,000.  As to this larger claim, the defendant interposed a defense in addition to the one already adverted to.  He claimed that in the early part of 1903 he sold to one Percy, a man of financial responsibility and residing in the state of Ohio, a large quantity of property connected with this tract, and as part consideration of its purchase price Percy assumed and agreed to pay the plaintiff all its demands against the defendant.  The property, it is claimed, was delivered to Percy, and about the same time the defendant had conversations over the telephone with agents of the plaintiff at Toledo, Ohio, whereby the plaintiff agreed to accept Percy as the sole debtor for this account and release the defendant from any liability to it.  Percy died prior to the commencement of this action, and the defendant was sharply contradicted as to these facts.  The weight of the oral testimony is against the defendant, and yet there are some circumstances which tend to corroborate his story.  For nearly five years no claim was made against him.  An action was commenced to establish the claim and make it a lien upon the property Apparently Percy defended, and the suit was pending at the time this action was commenced.  In February, 1907, the attorney for the plaintiff wrote to the defendant urging payment of the amount due the plaintiff and stating that the sum was $1,355, being for the material furnished for the Hancock county property, and no suggestion was made that the defendant was indebted for the larger sum or for any part of the goods furnished for the Wood county property.

Again, early in March the same attorney wrote to the defendant for information to aid in accomplishing an adjustment with Percy. Other circumstances are narrated which, it is claimed, tend to confirm the position of the defendant. Suffice it to say that the court very properly allowed the jury to determine whether the novation agreement was in fact made; and, if so, that the defendant must be acquitted of liability for the larger claim. There were, therefore, two important issues passed upon by the jury and adversely to the defendant.

In the first place, I have some doubt whether the preliminary facts essential in order to authorize the reception in evidence of the books of account and sales sheets of the plaintiff were sufficiently proven. Passing that, however, there are other errors which, it seems to me, cannot be disregarded.

The defendant had testified to the so-called novation agreement. He was cross-examined, properly enough, at great length on this subject. During that examination the plaintiff's counsel examined the defendant minutely as to several independent transactions in no way connected with the present action. It seems that the defendant 15 or 18 years ago was interested in a grape sugar glucose plant at Waukegan, Ill., and was an officer of that company. His connection with it ended in 1898, so that it could have no possible connection with this litigation. He gave a $15,000 note in connection with that business, an action was brought upon it, and an answer was interposed. Extracts from this answer were read before the jury on the trial of this action, and he was examined at considerable length in regard to the note and other transactions in connection with this industry. This proof was given under objection and it was incompetent.

Again, he was interested in the United States Starch Company and was the treasurer of that corporation, which was also established at Waukegan, Ill.; and also another company called the Ohio Crude Petroleum Company. His connection with these organizations was aired before the jury with a good deal of sarcasm and vigor by the counsel for the plaintiff. All this was under objection, and the evidence should not have been admitted.

An action was brought by one Harlow Curtis against the defendant charging him with fraud in obtaining about $20,000 by false pretenses from Curtis, and of course this litigation had nothing to do with the present action. Counsel commenced his cross-examination upon this subject by asking if upon that trial the counsel for the defendant did not ask the court to charge that there could be no recovery for breach of contract, "but the jury must find that the defendant was guilty of actual fraud before there can be a verdict against him"; that the court so charged, and then the counsel asked, "And the verdict of the jury against him was $18,555.40, wasn't it?" When the appeal book, containing the charge, was presented to the witness, the counsel for the plaintiff made this statement: "Look at the appeal book. You paid for it, I assume." These are simply samples of the cross-examination upon this subject. They had no relation whatever to the present trial, which was an action to recover for goods sold and delivered. Evidence of this kind would prejudice the minds of the jurors against the

defendant. The effect of it was to satisfy the jury that upon that trial the defendant was charged with actual fraud, that the court charged the jury there could be no recovery except for actual fraud, and the verdict was in favor of the plaintiff for the large sum stated. More damaging proof could not be imagined, and the plaintiff's counsel had no business to elicit it upon the trial. Repeated objections were interposed to this class of evidence all through the trial, but the court for some reason saw fit to admit it. The same subject was again entered upon further on in the cross-examination. The court in his charge tried to destroy the effect of this damaging testimony by saying to the jury that these transactions were of no consequence in the consideration of this action. The vice had been committed by receiving the testimony, and the effect of it could not be effaced from the minds of the jurors.

The courts have frequently condemned cross-examinations of this kind. Laidlaw v. Sage, 158 N. Y. 73, 102, et seq., 52 N. E. 679, 44 L. R. A. 216; Yager v. Person, 42 Hun, 400; People v. Morrison, 195 N. Y. 116, 88 N. E. 21, 133 Am. St. Rep. 780; Hall v. U. S. Radiator Co., 76 App. Div. 504, 78 N. Y. Supp. 549.

The action was a simple one, and the issues in a narrow compass, and were required to be passed upon by the jury. If the evidence was overwhelmingly against the defendant, there was still less justification for parading before the jury his unsuccessful attempts to defend other actions, and to read the charge of the court in one of these cases to the effect that no recovery could be had against him except for actual fraud and then sharply elicit the fact that a verdict was recovered against him for more than $18,000. The defendant with a meritorious defense and with the proof preponderating largely in his favor could not overcome the sting of that kind of examination.

The judgment should be reversed.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide event. All concur, except McLENNAN, P. J., who dissents in an opinion in which KRUSE, J., concurs.

McLENNAN, P. J. (dissenting). It is claimed on behalf of the plaintiff, and the uncontradicted evidence is to the effect, that the goods in question were sold by the plaintiff to the defendant in the months of July, August, September, October, November, and December, 1902; January, February, March, April, and May, 1903; and delivered to the defendant during that time at Findlay, North Baltimore, Sygnet, and Bowling Green, in the state of Ohio, near to or upon certain oil fields which the defendant owned and was engaged in operating in said state, and this action is brought to recover the agreed purchase price of the goods so sold and delivered.

It is not denied by the defendant, except upon his alleged information and belief, that the goods in question were sold and delivered as claimed by the plaintiff at the agreed price charged for the same; but upon this appeal he is simply in the attitude of insisting that the plaintiff failed to establish such sale and delivery by competent proof, and that was his attitude upon the trial.

Indeed, the court charged the jury (and no exception was taken) as follows:

"The defendant does not put himself in the position of denying that any of these goods were sold and delivered to him. He does not even do that. He simply puts himself in the position that a recovery should not be had against him unless the plaintiff proves, in accordance with the rules of evidence, that these things were sold and delivered as the plaintiff claims. * * * Mr. Jebb has never disputed any item of it, and does not now dispute any item of it, but merely insists upon legal proof of the sale and delivery."

It follows that, if such sale and delivery were established by competent evidence, and which were in no material respect denied or controverted by the defendant, the verdict was right upon the merits, unless the defendant established his defense of novation, to which attention will be called, and therefore, upon the question as to whether or not the goods were sold and delivered, no injury resulted to the defendant because of the rulings of the learned trial court, and therefore such rulings should not be made the basis of the reversal of the judgment and order appealed from, even if erroneous.

By section 723 of the Code of Civil Procedure this court is commanded:

" * * * And, in every stage of the action, the court must disregard an error or defect, in the pleadings or other proceedings, which does not affect the substantial rights of the adverse party. * * * "

It is therefore important upon this appeal to determine whether or not the plaintiff established its cause of action by competent and uncontroverted proof, and, if from such examination it appears that the defendant had no defense to such alleged cause of action, the judgment and order appealed from should be affirmed, even if errors involving immaterial issues or matters were committed in the conduct in the trial.

It appears that during all the times in question the defendant was the owner or lessee of two oil fields in the state of Ohio; one known as the Wood county or Percy property, and the other as the Hancock county or Kelley property. Plaintiff's claim on account of the Wood county or Percy property is $9,243.02, and on account of the Hancock county or Kelley property $1,548.95. The defendant did not order or receive any of the goods in question personally. He had his office and principal place of business in the city of Buffalo and did not personally attend to the purchase of supplies for the development of his oil fields, for which all the goods in question were used. The defendant, however, had an agent, concededly duly authorized, by the name of Boag, who was in general charge of the Ohio property, and who had authority to order such things or supplies as were necessary for the use and development of the same. That Mr. Boag was dealing with the plaintiff and was purchasing supplies from it on defendant's account, to the knowledge of the defendant, is not disputed. A Mr. Schuler was the field superintendent of the Wood county or Percy property, and a Mr. McCune was the field superintendent of the Hancock county or Kelley property, and both of these men were authorized to order supplies for use upon the oil fields of which they had charge respectively.

The evidence shows, without dispute, that there was a regular course of doing business between these agents and the plaintiff which was known to and fully understood by the defendant, and acquiesced in by him, during all the times in which the goods were being ordered by his agents and delivered by the plaintiff.

The method of doing business was substantially as follows: When any supplies or materials were required upon either of the oil fields, the agent or superintendent in charge made out a written order in the name of the defendant and forwarded it to one of plaintiff's branch stores located near the oil fields. Such order was filled at such branch store, and the original order was sent to the principal office of the plaintiff at Toledo. There a bill was made out to the defendant for the goods specified in such order, and such original order was at-. tached to such bill and was sent to Mr. Boag, defendant's general agent, and by him such bills and orders were transmitted or sent to the defendant at his office in the city of Buffalo.

Thus the defendant was informed in each instance that the order had been made by his agent and had been filled by the plaintiff, and, presumably, that the goods called for by such order had been received by his agents upon the oil fields which he owned or was engaged in operating.

Plaintiff's bookkeeper testified, and it is not contradicted, that when the plaintiff received the original orders at its office in Toledo, made by the defendant's agent, they were entered upon plaintiff's books, and that from such entries in the books and from such orders the bills or statements which were sent to the defendant were prepared. He testified that he checked over the entries so made from such orders, saw that they were properly made, and then that bills, to which the orders were attached, all of which include the material or articles for which recovery is sought, were sent to the defendant, charging him with the same, and it appears without contradiction that during the whole time when the goods were being thus ordered and delivered the defendant did not protest or suggest that the bills sent to him were not in all respects correct.

As we have seen, it is claimed that the goods in question were sold and delivered during the last half of the year 1902 and the first half of the year 1903, bills for all of which, with the original orders attached, were sent from month to month to Mr. Boag, defendant's general agent, and by him forwarded to the defendant, and were received and retained by him without objection or protest for nearly five years, when the plaintiff sought to recover the purchase price, which was refused, and this action was commenced.

The defendant then said, in substance: "I have destroyed all the orders made by my agents and sent to the plaintiff for goods, and which were by it returned to me (which is the admitted fact), and therefore the plaintiff cannot prove my indebtedness to it." Of course, after that lapse of time it was impossible for the plaintiff to prove by any bookkeeper that each one of the items contained in the respective orders, and which in the aggregate numbered many thousands, were correctly transcribed upon its books.

Bearing upon this issue, as to whether the goods were sold and delivered to the defendant, it is important to note some of the defendant's admissions. His admission made in his deposition taken before trial was read in evidence. It was as follows:

"I haven't any books. Books were kept. They were lost and destroyed before the commencement of this suit. I have never ascertained the bills or ascertained if that amount (referring to $6,578) is the correct amount. I haven't had any one do it for me. My bookkeeper never reported to me that the amount was still due. Boag might possibly have done so. He reported certain bills that were unpaid. I couldn't say they were approximately that amount. They amounted to several thousand dollars. That was in the spring of 1903, some time."

He further admits that pursuant to the requirements of a subpœna he had made a general search for the bills, invoices, and correspondence pertaining to his oil business in Ohio and had been unable to find any; that on or about April 11, 1903, he made and entered into an agreement with Thomas Percy, in and by which Percy assumed and agreed to pay his indebtedness to plaintiff, and yet it is now urged that he was not indebted to the plaintiff. Again, he admits that he looked up, himself, plaintiff's bill and found that it had not been paid and that he owed this bill in March, 1903. Again, the defendant admits that his bookkeeper, who received the mail, told him about the indebtedness of the oil property. As before said, he also admits that he made no objection to the items of the account and that he had a synopsis of the account and that he offered to assist plaintiff in collecting its claim against him from Percy. He admits that he never had any suspicion that the plaintiff was intentionally making out false invoices to him for material or supplies never received. He admits that the plaintiff furnished him bills each month and that some of the bills were preserved for a time. Indeed, the defendant, in his answer alleges the assumption of plaintiff's claim against him by Percy; and yet, so far as this branch of the case is concerned, he is in the attitude of insisting that the plaintiff has failed to establish that the goods in question were sold and delivered to him.

The evidence bearing upon this branch of the case was fairly summarized by the learned trial court in his charge to the jury (to which no exception was taken) as follows:

"It is also shown that the books of the plaintiff have charges against the defendant, being the items which go to make up these bills; that they kept honest books; and that some portion at least of these goods have been actually delivered on the field. It is also shown by the evidence of the plaintiff's witnesses that this account has been, according to their evidence, brought many times to the attention of Mr. Jebb, and that Mr. Jebb has never disputed any item of it, and does not now dispute any item of it, but merely insists upon legal proof as to the sale and delivery."

It seems to me clear that the plaintiff established by competent evidence, which was practically uncontradicted, when taken in connection with the admissions of the defendant, that the goods for which it seeks to recover were sold and delivered to the defendant as claimed by the plaintiff, and that he (the defendant) became liable to pay for the same, and that the defendant, there being no material dispute in the evidence, was not entitled to have that question submitted to the jury,

but that the plaintiff was entitled, as asked for by its counsel, to a ruling by the court to the effect that the goods in question had been sold and delivered to the defendant by the plaintiff, as claimed by it.

A large amount of evidence was given by the defendant by which it was sought to establish the defense of novation. In other words, that one Percy had entered into an agreement with the defendant by which he (Percy) assumed to pay all the indebtedness of the defendant to the plaintiff, and that the plaintiff accepted Percy as its debtor and released the defendant from all obligation on account of the indebtedness which arose in respect to the Wood county or Percy oil field, so called.

Upon the evidence offered by the defendant a serious question of fact was presented as to whether or not Percy had agreed to pay the defendant's indebtedness to the plaintiff, or, if such agreement was made, whether it was not abandoned or its terms and conditions repudiated by the defendant. But, whatever may be the truth as to that controversy between the defendant and Percy, we think the evidence of the defendant wholly fails to establish that the plaintiff ever accepted or promised to accept Percy as its debtor in the place and stead of the defendant.

The court charged the jury that:

"To constitute novation in this case there must be an agreement between Percy and the National Supply Company by which Percy agreed to assume and pay plaintiff's debt against Jebb."

It is evident that a finding by the jury of the mere fact that Percy agreed to assume and pay the debt of plaintiff against Jebb would not be sufficient to relieve Jebb from his original liability to plaintiff, and this could never be accomplished unless the plaintiff for a valuable consideration agreed to accept Percy as its debtor in the place of the defendant and agreed to relieve him from his indebtedness. To meet that exigency the defendant testified to a conversation which he claims to have had over the telephone from his residence in Buffalo with Mr. Marscho and Mr. Hardy, employés or officers of the National Supply Company, in its office in Toledo, in which both of these gentlemen stated to him, in substance, that Percy had called and stated to them that he had agreed with Jebb to pay its claim against him and that he would do so. The defendant, however, admitted that he had no personal acquaintance with either Mr. Hardy or Mr. Marscho. He does not claim that he had ever had any previous conversations with either of them or that he knew the voice of either. There is no evidence that the plaintiff maintained a telephone in its office in Toledo at the time referred to. There was no peculiarity about the voice of either that the defendant upon his examination could recall, and he did not pretend to recognize the voices of those men even after they had testified upon the trial of this action. So that there was absolutely no identification of the men whom he claims to have talked with over the telephone and whom he claims said, in substance, to him that they would accept Mr. Percy as plaintiff's debtor in place of the defendant. Both Mr. Marscho and Mr. Hardy testified that they never had any such conversation over the telephone or otherwise with the defendant and had never in any manner intimated to him that the Na-

tional Supply Company would accept Mr. Percy as its debtor in the place and stead of the defendant, and both testified that they had no authority to make any such agreement. Besides, there is no evidence which even suggests a consideration which passed as between the defendant and the plaintiff for such agreement on its part.

Upon this evidence, we think the defendant made no case which entitled him to have submitted to the jury the question of novation, but that, again, the court should have instructed a finding upon that issue in favor of the plaintiff.

If right in the conclusion that the plaintiff established the sale and delivery of the goods for which recovery is sought by competent evidence, and such evidence was absolutely uncontradicted, the defendant having offered no evidence tending to establish the defense of novation, it follows that the plaintiff was entitled to a direction of a verdict in its favor for the amount of its claim, and that any errors committed by the learned trial judge, or the improper conduct on the part of counsel during the trial which might affect the determination of the jury if there had been any material question of fact for them to decide, should not be the basis of a reversal of the judgment in this case.

It is claimed that the court permitted plaintiff's counsel to go too far in his cross-examination of the defendant. He asked him about certain litigation that he had been engaged in, certain transactions which were the subject of litigation, all, as insisted by the respondent's counsel, as bearing upon his credibility. The court took this view of it and charged the jury explicitly and very fully that any transactions which the defendant might have had with other parties, whether honest or otherwise, could have no bearing upon any issue in this case; that such evidence was only admitted for the purpose of throwing light upon the character of the defendant as bearing upon the question as to whether the defendant could in this action be believed.

But, as before suggested, if we are right in the conclusion that the plaintiff established the sale and delivery of the goods in question by legal and competent evidence, such evidence not having been controverted by the defendant, and that the defendant failed to establish his defense of novation, even prima facie, the cross-examination of the defendant becomes entirely immaterial.

But, even if there may be in some view of the testimony a bare question of fact, the evidence is so overwhelmingly in plaintiff's favor, establishing the justness of its claim, and there being an utter lack of any defense upon the merits on the part of the defendant, and the jury having found in plaintiff's favor, we think the findings of the jury should not be disturbed, notwithstanding the cross-examination of the plaintiff, in view of the very full and comprehensive charge delivered by the learned trial court, in which the jury were fully instructed as to the matters which they should consider in reaching a verdict in the premises.

We conclude that the judgment and order appealed from should be affirmed, with costs.

KRUSE, J., concurs in dissent.