JOSEPH A. FLETT, as Sole Surviving Member of ALEXANDER FLETT and Another, Doing Business under the Firm Name and Style of A. FLETT & Co., Respondent, *v.* THE ROYAL BANK OF CANADA, Appellant.

First Department, November 30, 1923.

Negligence — defendant delivered plaintiff's goods to third persons on consignment — contrary to instructions goods were delivered as property of plaintiff's agents — goods were attached by creditors of agents — during determination of attachment claim goods deteriorated in value due to improper storage — proximate cause of damage was not mistake in giving true name of owner — defendant is not liable.

In an action to recover damages to barreled herring caused by improper storage it appeared that the plaintiff, through his agent, shipped 456 barrels of Newfoundland Scotch cured herring to a firm in this State subject to inspection and approval; that a draft on the consignee together with documentary evidence was delivered to and accepted by the defendant which agreed to deliver as instructed; that defendant was instructed that in case of rejection the herring were to be delivered as the property of the plaintiff to another firm on consignment; that delivery was made to the third person but the herring was delivered as the property of the plaintiff's agents; that creditors of the plaintiff's agents attached the herring and during the delay incident to the determination of the attachment claim the herring, because of improper storage, deteriorated in value; and that the plaintiff did not show that the levying of its attachment was due to the error of the defendant in asserting the ownership of the herring to be in the plaintiff's agents.

*Held*, that the proximate cause of the damage to the herring was not the error of the defendant in giving the true name of the owner, since there is no evidence to show that the attachment creditors relied on that error in procuring the attachment.

Furthermore, even though the attaching creditors relied on that statement, the damage was not caused by the institution of the attachment but by the fact that the herring were not properly stored pending the settlement of the attachment proceedings.

APPEAL by the defendant, The Royal Bank of Canada, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of January, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying the defendant's motion for a new trial made upon the minutes.

*William E. Sims*, for the appellant.

*Virginius Victor Zipris*, for the respondent.

MARTIN, J.:

The plaintiff, Joseph A. Flett, was a herring curer of Curling, Newfoundland, and Joseph Vidootzky & Son, Inc., a domestic

corporation, was his local agent in the city and State of New York. The defendant, Royal Bank of Canada, had an office and place of business at St. Johns, Newfoundland.

In the month of March, 1920, one Fred H. Hue, doing business as the Imperial Brokerage Company, was a shipper and forwarder of herring at St. Johns, Newfoundland. He, as agent, agreed on behalf of plaintiff to ship 456 barrels of Newfoundland Scotch-cured herring, belonging to and for the account of plaintiff, to Messrs. Kaminsky & Sereysky subject to inspection and approval of the goods. A draft on Messrs. Kaminsky & Sereysky covering the shipment, together with documentary evidence, was delivered to and accepted by the defendant bank, which agreed with plaintiff, through said Imperial Brokerage Company, to deliver the shipment as directed. If Kaminsky & Sereysky refused to accept the shipment and pay therefor, then the goods were to be delivered to Joseph Vidootzky & Son, Inc., on consignment, without payment of the draft, for and on account of plaintiff. The Imperial Brokerage Company directed defendant bank to instruct its agent in New York to advise Messrs. Kaminsky & Sereysky of the arrival of the herring and to deliver to them an inspection permit, so that they could examine the shipment promptly. They were to be given twenty-four hours' notice after the arrival of the goods, in which time they could either accept or reject the same. If the herring were accepted, Kaminsky & Sereysky were to immediately purchase the documents by New York funds. If they should reject the merchandise, the defendant was to hand the documents, except the draft, to Messrs. Joseph Vidootzky & Son, Inc., for and on account of A. Flett & Co. on consignment, obtaining a receipt in exchange for said documents, which receipt was to be returned to the Imperial Brokerage Company, as shipper, forwarder and agent for plaintiff.

On the 19th day of April, 1920, the New York agency of defendant informed Joseph Vidootzky & Son, Inc., of the arrival of the shipment, which had been refused by Kaminsky & Sereysky, and that the said Joseph Vidootzky & Son, Inc., was to accept the shipment on consignment. It was so accepted, but contrary to the express and explicit instructions, admittedly received at the New York agency bank from the plaintiff, the goods were delivered to Joseph Vidootzky & Son, Inc., as the property of the Imperial Brokerage Company and not as that of plaintiff.

It is asserted by plaintiff that, as a result of that mistake, a claimant against the Imperial Brokerage Company, on the 22d day of April, 1920, while the barrels of herring were in a government warehouse, attached the herring through the sheriff of Kings

18

county, alleging that they belonged to the Imperial Brokerage Company. The matter was afterwards heard before a sheriff's jury and it was found that plaintiff was the owner of the property. By the time the plaintiff's claim was allowed, a portion of the herring became worthless by reason of the fact that they had not been properly stored.

The plaintiff now seeks to recover his loss from the bank, alleging that the damage occurred by reason of the attachment which, it is asserted, was brought about through the information contained in the papers issued by the bank to the effect that the property belonged to the Imperial Brokerage Company.

Although the complaint sets forth that the attachment in question was levied because of the error of defendant bank, there is no evidence of that fact in the record. Plaintiff failed to prove that the attachment was levied because of the error in asserting the ownership of the goods to be in the Imperial Brokerage Company instead of in plaintiff.

The mere fact that wrong information with reference to the ownership was conveyed to the public would not make the defendant bank liable for the damage incurred. It could not be said that the proximate cause of the damage to the herring which was placed in improper storage was the mistake in giving the true owner's name. The evidence does not relate defendant's negligence to the attachment as cause and effect. It does not disclose why the claimants, Sklaroff & Sons, thought the goods were the property of the Imperial Brokerage Company.

It may be true that Joseph Vidootzky & Son, Inc., sent out notices that they had these goods for sale, but there is no evidence tending to show that Sklaroff ever saw such a notice. Upon the record before the court the act of Sklaroff & Sons was wholly independent of any act of defendant.

Though it be conceded as probable that the bank's giving inaccurate information with reference to the ownership brought about the attachment, it does not follow that the damage herein resulted because of such inaccurate information.

That the herring were placed and allowed to remain in improper storage is not the result of the error in the papers which stated ownership as being in the Imperial Brokerage Company instead of in the plaintiff.

In *Lowery* v. *Western Union Telegraph Company* (60 N. Y. 198, 201) the court said: " The question is therefore presented, upon which courts are frequently called to pass, whether there is such a connection between the wrong alleged and the resulting injury, that in contemplation of law they stand related to each other as

cause and effect, so as to give a right of action against the wrong-doer, and make him chargeable with the loss. The law does not undertake to hold a person who is chargeable with a breach of duty toward another, with all the possible consequences of his wrongful act. It, in general, takes cognizance only of those consequences which are the natural and probable result of the wrong complained of, and which, in the language of POLLOCK, C. B., in *Rigley* v. *Hewitt* (5 Exch. 240), may reasonably be expected to result under ordinary circumstances from the misconduct. Every injury is preceded by circumstances, if any one of which had been wanting the injury would not have happened. In some sense, therefore, each is a cause of the injury, but to fasten a legal responsibility for the injury upon every person whose wrongful act, however remote therefrom, had contributed to bring about a situation or condition which made the injury possible, would be an impracticable rule, and one which, if enforced, would, in most cases, inflict a punishment wholly disproportioned to the wrong. * * * It is not easy, and it is probably impossible, to furnish any single test by which it may be determined in all cases whether damages claimed in an action of tort are sufficiently proximate to authorize a recovery. They are considered too remote when, though arising out of the cause of action, they could not, in the ordinary course of things, be expected to have arisen, and do not naturally flow from the wrong. (Mayne on Damages, 26.) So, also, where they have been immediately caused by the independent, willful, or tortious act of a third person, intervening between the misconduct of the defendant and the damage, if such intervening wrong could not naturally or reasonably have been anticipated. (*Crain* v. *Petrie*, 6 Hill, 522; *Vicars* v. *Wilcocks*, 8 East, 1; *Knight* v. *Gibbs*, 1 A. & E. 43; Mayne on Dam. 40.) ' To maintain an action for special damages,' says NELSON, Ch. J., in *Crain* v. *Petrie*, ' they must appear to be the legal and natural consequences arising from the tort, and not from the wrongful act of a third person, remotely induced thereby. In other words, the damages must proceed wholly and exclusively from the injury complained of.' "

In *Leeds* v. *New York Telephone Company* (178 N. Y. 118) the court (at p. 121) said: " Was the specific act of negligence charged against the defendant in this case the natural, efficient and, hence, a proximate cause of the accident; or was it the result of the intervention of an independent cause, which defendant was not bound to anticipate and without which the injury would not have happened? I think that the latter was the case. The negligent conduct of the persons in using the derrick upon the building was an unusual occurrence and not such as should have been foreseen

by the defendant. In *Laidlaw* v. *Sage* (158 N. Y. 73) the definition of that which is the proximate cause of an event was expressed by Judge MARTIN as ' that which in a natural and continual sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred; and the act of one person can not be said to be the proximate cause of an injury, when the act of another person has intervened and directly inflicted it.' · (Shearman & Redfield on Negligence, § 26;* Wharton on Negligence, § 134.)"

There being no evidence in the record before us to sustain the verdict rendered against the defendant, and it affirmatively appearing that the defendant was not responsible for the damage suffered by plaintiff, the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment and order reversed, with costs to the appellant, and the complaint dismissed, with costs.