**WOOLLEY v FELL**

Ohio Appeals, 9th Dist, Summit Co

No 2828.   Decided April 15, 1937

Wilkin, Huggett & Lightner, Cleveland, and O. L. Dally, Akron, for appellant.

Waters, Andress, Wise, Roetzel & Maxon, Akron, for appellee.

**OPINION**

By DOYLE, J.

The plaintiff's intestate, Richard J. Woolley, was drowned on July 1, 1933, in Fell Lake, Summit County, Ohio. The lake is artificial and about seven acres in area. A part of it is used for bathing purposes. There is operated by the management, in connection with the lake facilities, a recreation ground used for picnics and parties.

The defendant in the court below, the appellee herein, charged the public an entrance fee to the grounds, and made a further charge for the use of the bathing area of the lake.

The plaintiff administrator. Wm. J. Woolley, his wife, Maxine Woolley, their two children, and one Daniel Grafton, a grandfather of the children, in the early afternoon of July 1, 1933, entered the grounds after paying the admission fee, and proceeded to the bath houses; and all changed from street clothes into bathing suits, with the single exception of the grandfather Grafton. After this event, they proceeded to the gate leading into the beach, and were there advised by a servant of the management that general admission tickets to the grounds were not acceptable for bathing, and that the bathing tickets could be purchased at the park entrance ticket office, approximately 200 feet away.

Mr. Woolley and the grandfather Graft-

on left Mrs. Woolley and the two children, one a daughter aged 12, and the decedent Richard, aged 8, standing on the driveway in front of the entrance to the beach, while they walked up a grade to the ticket office about 200 feet away. While the men were getting the tickets, Mrs. Woolley and the children started to walk toward the ticket office to meet them; and after going about 25 feet, the men were observed to be returning.

After the party had reassembled and started toward the entrance to the beach, the decedent was discovered missing. Inquiry was made of the lady who took the tickets at the gate to the beach whether she had seen a little boy wearing a blue bathing suit, and she replied that she was "positive" the boy did not go through the gate, and that he could not go through without her seeing him. After further inquiry at the entrance gate, the family separated.

The evidence is conflicting as to the identity of the persons who were asked to aid in the search for the boy, and as to who were told, and by whom, that he was not in the water. It is also conflicting as to whether they were told by a life guard or by a guest of the resort that the boy was not in the lake. Subsequently, two life guards who were on duty began to search. and found the child under water from 20 to 30 inches deep. Artificial respiration was used at first, and later a pulmotor, but without result.

No one saw the child in the water, nor did anyone hear an outcry. In fact, no one saw or heard the child after he left his mother and sister on the driveway outside of the bathing beach area.

The plaintiff below, the appellant herein, subsequently started a suit against the defendant below, the appellee herein, for the wrongful death of plaintiff's decedent, in which suit he charged the defendant with negligence in a number of respects; but all of them will be disregarded here except the following, which was the only one upon which any evidence in support was introduced:

"4. That after he or his employees were notified that the deceased was missing at the bathing beach, they failed and neglected to make immediate search for and find and rescue the decedent, although in the exercise of reasonable and ordinary care they could have done so."

The answer was a general denial.

A verdict in the sum of $2,000 was returned by the jury. The defendant filed a motion asking for judgment non obstante veredicto, which was sustained, and final judgment was entered for the defendant. The case is in this court on appeal on questions of law.

The errors charged are as follows:

1. That the court erred in granting appellee's motion to strike from the pleadings specification of negligence No. 1 and a portion of specification No. 2.
2. That the court erred in sustaining the motion of the appellee for judgment notwithstanding the verdict.
3. That said judgment is contrary to law and against the weight of the evidence.
4. Other errors on the face of the record prejudicial to the rights of the appellant.

The second assignment of error will be considered first.

Sec 11601, GC, is as follows:

"When, upon the statements in the pleadings or upon the evidence received upon the trial, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, although a verdict has been found against such party and whether or not motion to direct a verdict may have been made or overruled, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence."

This section clearly empowers a trial judge to look to the evidence and the pleadings after a jury verdict, and render a judgment non obstante veredicto against the party having the burden of proof if the state of the evidence is such that reasonable minds can arrive at but one conclusion and that adverse to the claim of the plaintiff. This is so even though the court has overruled motions for a directed verdict at the conclusion of the plaintiff's case in chief, and at the conclusion of all the evidence.

Levin v Kiska et, 54 Oh Ap 408, (23 Abs 363).

Is the evidence in the instant case such that reasonable men, after a careful consideration of the evidence, can arrive at but one conclusion, and that conclusion one which fails to establish liability against the defendant?

The trial judge, commenting upon his reason for overruling the motion of defendant for a directed verdict, said:

"I will overrule the motion, based on the record as it now stands, upon the statement of the guard that the boy was not in there, and that is definite enough in itself to have caused the parents to look elsewhere, whereas, had the guard said that he had not seen him, a further insistence that he was there might have been made by the parents, and upon that one point of law as I see it, this case stands * * *. For that reason I will overrule the motion at this time, and exceptions may be granted."

For the sole reason that this alleged statement by one who was identified as a guard tended to hinder instant search for the missing boy, the trial judge submitted the case to the jury.

In an action for wrongful death based upon negligence, it is necessary to prove facts from which it may be ▆▆▆▆▆ deduced that the death was the proximate result of negligence. Either direct evidence or proof of facts from which such an inference may be drawn are sufficient.

In Laidlaw v Sage, 158 N. Y. 73, at page 101, the court said:

"The plaintiff must fail if the evidence does not show that the injury was the result of some cause for which the defendant is responsible, and where the proof is by circumstances, the circumstances themselves must be shown and not left to rest in conjecture, and when shown it must appear that the inference sought is the only one which can fairly and reasonably be drawn from the facts."

We are unable to find any evidence in this record from which we can conclude that the intestate's death resulted proximately from negligence of the defendant. No one knows how he came to his death. He may have slipped through the gate unseen. He may have pursued a route outside of the fenced lake and entered through a gate several hundred feet from the main gate, or he may have climbed the fence. He may have circled the lake to a point outside of the marked bathing area and waded in the shallow water to the place where he was subsequently found, or he may have slipped or fallen from the bank.

The record fails to establish any negligent delay on the part of the defendant's employees in instituting search in the water of the lake. Neither the parents nor anyone else knew whether he was playing in the park outside of the fenced in lake area, or whether he had gone around the lake on the shore, or whether he had gone to the water. No one knew where to look. There is an entire absence of evidence tending to prove that, had the life guards gone immediately after notification to the spot where the boy was found, he could have been saved. In fact, the evidence points strongly to the fact that his body was recovered within 8 to 10 minutes from the time he vanished, and it is further very questionable as to whether or not he was found within the bathing area or whether he entered the water within the bathing area.

There was no evidence tending to prove that the bathing area was unsafe for bathing purposes; that it was not well marked; that there were insufficient or incompetent guards or that they failed to perform their duties; nor is there any evidence tending to prove that the death proximately resulted from any acts of negligence, either of commission or omission, on the part of the defendant.

Negligence and proximate cause must be established before a recovery may be had, for the law does not permit a verdict to be founded on speculation or guess-work.

We are of the opinion that the trial judge could have properly directed a verdict for the defendant at the conclusion of all of the evidence, and, that ▆▆▆▆▆ being so, the trial judge did not commit error in rendering a judgment non obstante veredicto in compliance with the statute set forth supra.

In view of the foregoing, the other errors complained of need not be discussed.

Judgment affirmed.

STEVENS, PJ, and WASHBURN, J, concur in judgment.